## ROBINSON *et al., vs.* GEORGE W. TOWNS.

1. The assignment of a judgment and execution conveys away the plaintiff's interest in the further enforcement of it, but not his interest in money which the sheriff has previously collected on it.
2. Judgment on rules against a sheriff are admissible in evidence against him and his sureties, in an action on his bond for failure to pay over moneys so adjudged against him.
3. The attorney of a non-resident plaintiff is an incompetent witness for his client.

Action on Sheriff's Bond, in Muscogee Superior Court. Tried before Judge WORRILL, at May Term, 1859.

The defendants in error brought suit on the bond of Seymour R. Bonner, deceased, late Sheriff of Muscogee county, against Alexander J. Robinson, his administrator, and the administrators of the securities to said bond; alleging that Bonner had collected money on a *fi. fa.* in favor of said defendants in error against Thomas Moore and had failed to account for it. To this action, pleas of the general issue, payment, etc., were filed, and that the securities were discharged, because the plaintiffs in the action (defendants in error) had granted the sheriff indulgence, etc. On the trial of the case, the following testimony was introduced:

Plaintiffs read their *fi. fa.*, returnable to January Term, 1841, of Muscogee Inferior Court, and the order allowing them to sue on the sheriff's bond. They then read an entry on the *fi. fa.*, made by Bonner, in January, 1842, showing that he had received on the *fi. fa.* that day, $839 34, and another entry dated October 15th, 1841, showing the amount then received on said *fi. fa.* to be $415 00

Here plaintiffs closed, and defendants proposed to read the balance of the entries on said *fi. fa.*, consisting of a transfer of said *fi. fa.* to Henry L. Benning, dated November 3d, 1842, together with sundry entries of payments made to the attorney of said assignee, of moneys raised on said *fi. fa.*, other than those specified in the entries read in evidence by plaintiffs. Objection was made to this evidence and the Court rejected it.

Defendants then read a receipt of plaintiffs' attorneys,

Thomas & Downing, dated March 13th, 1843, in which they acknowledge to have received from Bonner $474 45 on said *fi. fa*—said amount consisting of $173 25 collected by them for Bonner on a *fi. fa.*, in his favor, and $301 20 in a note on Walter T. Colquitt received by them as cash.

Alfred Blackman was introduced by defendants, and testified, that, as agent for Bonner, he paid Thomas & Downing, in 1843, the sum of $474 45 on said *fi. fa.*, being the amount named in their receipt; and that about the 19th of November, 1845, Bonner, in the presence of the witness, had another settlement with Thomas & Downing (plaintiffs' attorneys,) at which time said attorneys receipted to Bonner for over $800 00. No money was paid by Bonner, but said receipt related to collections which had been made by said attorneys for Bonner, and did not include the amount specified in the former receipt. The witness also testified that he heard Thomas & Downing say, at the time last referred to, that Bonner then owed only about $135 00 on said *fi. fa.*, and that they had in their hands notes belonging to Bonner, which they believed to be good, more than sufficient to satisfy the balance due on said *fi. fa.*, and which they would apply to the payment of said balance. He further stated that the receipt for over $800 00 had been lost by Bonner as testified to by him; and that he, in 1842, received thirty dollars for Thomas & Downing as agent for Bonner, on account of moneys collected by them for Bonner.

Here defendants closed, and plaintiffs read an exemplification from the Inferior Court, showing that they had obtained a rule absolute there against Bonner for some $1,398 71 principal and interest, and that upon issue made up in said Court at the instance of Bonner, alleging that said rule absolute had been paid off, said issue was determined against Bonner.

L. T. Downing, one of plaintiffs' attorneys, was then sworn in, and on his *voir dire* stated that his clients (the plaintiffs,) were all non-residents of Muscogee county at the time suit was brought, and still were. Defendants objected that he was not a competent witness, on the ground, that his clients being non-residents, he was liable for the costs of the suit, and was therefore interested. The Court overruled the objection, and Mr. Downing testified at considerable length, stating, amongst other things, that the receipt for $800 00;

given November 19th, 1845, referred to by Blackman, embraced also the $474 45 mentioned in the receipt of Thomas & Downing, of March 13th, 1843—the receipt given on the said 17th day of November being made to include the amount paid then, as well as the amount paid previously, so as to make one receipt show the whole amount paid by Bonner—such being the purpose had in view as well as witness recollects. Mr. Downing also denied that he had ever stated that Bonner owed only $135 00 for money collected on said *fi. fa.*, and that Thomas & Downing had notes of Bonner's sufficient to pay off that balance.

The jury returned a verdict for plaintiffs for the sum of $1,471 24.

Defendants moved for a new trial on the following grounds:

1st. Because the verdict is against the evidence; because the Court allowed two of the entries on the execution of Thomas R. Lamar and Abner McGehee, executors, etc., against Thomas Moore, to be read in evidence without requiring all the entries on said execution to be read.

2d. Because the Court refused to allow all the entries on said execution to be read to the jury.

3d. Because the Court refused to allow a transfer of said execution from plaintiffs to Henry L. Benning, dated Nov. 3d, 1842, to be proven and read in evidence, to show title in said execution out of plaintiffs at the time this suit was instituted.

4th. Because the Court refused to allow the receipt of Colquitt, Echols & Jeter of $461 12, proceeds of sale of house and lot sold on 1st Tuesday in October, 1841, which receipt was endorsed on said execution to be read in evidence.

5th. Because the Court allowed an exemplification of rule *nisi* in favor of said Bonner against plaintiffs, to show cause why rule absolute formerly granted against Bonner should not be discharged, and satisfaction entered thereof of record, and judgment of the Court thereon to be read in this case.

6th. Because the Court allowed an exemplification from the Inferior Court of a rule *nisi* and rule absolute against said Bonner, as sheriff, to be read in evidence, although there was no evidence that service of said rule *nisi* had ever been perfected on said Bonner.

7th. Because the Court admitted the testimony of L. T. Downing, although it appeared from said Downing's examination, that he was one of the attorneys of record of the plaintiffs, who resided, at the commencement of the suit, out of Muscogee county, and when it appeared that said Downing, as plaintiff's attorney in this case, had received notes in part payment of said execution against Moore, and was authorized to receive them by plaintiffs, and he, Downing, would not deny that he was not authorized to receive full payment thereof in good notes, and it appeared from the evidence of Blackman that he had received notes from Bonner in full payment of said moneys received by Bonner, as sheriff, on said execution, and consequently he was interested in the event of said suit.

8th. Because said Downing was an incompetent witness on the ground of interest: 1st. Because he was attorney of record for non-resident clients, and therefore liable for costs. 2d. Because, having received notes from Bonner in payment of amounts collected by Bonner on said execution, he, Downing, had made himself responsible to plaintiffs, and for this reason was interested in obtaining a recovery in this suit. 3d. Because what Downing testified to was information obtained by reason of the relationship of client and attorney.

9th. Because the verdict is against law and the evidence.

The motion for a new trial was refused by the Court, and counsel for defendants excepted.

R. W. DENTON, for plaintiff in error.

THOMAS & DOWNING, for defendants in error.

*By the Court.*—STEPHENS, J., delivering the opinion.

1. We think that the Court properly excluded the entries which the defendants desired to have read in evidence. None of them tended to show a discharge of the sheriff from his liability to pay over to the plaintiffs in execution the money which he had collected for them before their assignment of the judgment. The entry which was chiefly urged as a proper one to have gone in evidence, was the assign-

ment itself. It was said that the plaintiffs could not maintain the suit, because they had parted with their interest by the assignment. They did part with their interest in the further enforcement of the *judgment*, but not with their interest in their money which the sheriff had *previously* collected on it. The assignee acquired, and they lost the right to enforce the judgment as it stood at the time of the assignment, that is to say, the right to collect what was still due on the judgment, out of the *defendant* in it. Money previously collected and held by the sheriff would not be reached by an exercise of the assignee's right of enforcing the judgment, for such money was the fruit of the previous enforcement of the judgment to that extent. Such money constituted a debt from the sheriff to the plaintiffs, to be enforced by a rule or suit against him.

2. We see no error in the admission in evidence of the former judgments against the sheriff.

3. We think Mr. Downing was an incompetent witness, on account of his interest in the costs. The Act of 1812, in relation to the liability for costs on the part of counsel for non-resident plaintiffs, *Cobb's Dig.*, *p.* 505, consists of two sections creating different liabilities. The first section makes the attorney liable for costs whenever his client, being a non-resident plaintiff, is cast in his suit; and this section is left unaffected by subsequent legislation. The second section makes both the attorney and client, that client being a non-resident plaintiff, liable for costs, whenever the plaintiff gains the case, but the defendant proves to be unable to pay the costs. This section is modified by the subsequent Acts of 1834 and 1842, (on the next two pages,) so as to leave out the liability of the attorney in *that class* of cases. The result of all the Acts is, that the attorney of a non-resident plaintiff, as Mr. Downing was, is liable for costs if he fails to get judgment against the defendant, and not liable if he succeeds. But it was argued that the plaintiffs must have had a verdict, without Mr. Downing's testimony, for an amount which, though far below their claim, would have carried the costs; and that Mr. Downing was therefore secure from costs, either with or without his own testimony. We do not think so. On the testimony of Mr. Blackman, without the explanatory and contradictory statement of Mr. Downing, there might have been a clear verdict

for the defendant. We do not intend to be understood as intimating that such a verdict either ought, or ought not, to have been rendered, if Downing's testimony had been out of the way, but only that we should not feel authorized to set such a verdict aside.

Judgment reversed.